IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2022

## GREGORY ARNEZ GOFF v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-21-90     Roy B. Morgan, Jr., Judge**

---

### No. W2021-00929-CCA-R3-PC

---

The petitioner, Gregory Arnez Goff, appeals the denial of his petition for post-conviction relief, which petition challenged his convictions of aggravated robbery and aggravated assault, alleging that he was deprived of the effective assistance of counsel. Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, and TIMOTHY L. EASTER, JJ., joined.

Joseph T. Howell, Jackson, Tennessee, for the appellant, Gregory Arnez Goff.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case arose from an incident in which the petitioner "attacked the victim, Marshall DeBerry, with a hatchet" and "took $13.00 and a $20.00 bus card from the victim's pocket." *State v. Gregory Goff*, No. W2020-00153-CCA-R3-CD, 2020 WL 7040981, at *1 (Tenn. Crim. App., Jackson, Nov. 30, 2020). This court summarized the evidence on direct appeal:

> [T]he [petitioner] hit the victim in the back of the head three times with a hatchet. After hitting the victim with the hatchet, the [petitioner] stole $13.00 and a bus pass from the victim's pocket. . . . As a result of the attack, . . . the victim was bleeding from a "large laceration" and required medical

attention, and the victim testified [that] he lost consciousness, suffered a skull fracture, received nearly [30] stitches, remains scarred and disfigured, and continues to experience pain and dizziness.

*Id.* at \*5. The jury convicted the petitioner of aggravated robbery and aggravated assault, and the trial court imposed an effective 35-year sentence. *Id.* at \*3. This court affirmed the petitioner's convictions on direct appeal. *Id.* at \*1.

The petitioner filed a timely pro se petition for post-conviction relief, and after the appointment of counsel, filed an amended petition, alleging that he was deprived of the effective assistance of counsel.

At the August 9, 2021 evidentiary hearing, the petitioner testified that trial counsel failed to object to an out-of-date jury instruction. He said that counsel also failed to obtain the victim's medical records before trial and failed to object to the State's offering only a portion of those records on which the State had highlighted certain information into evidence. The petitioner asserted that had counsel objected to the admission of the highlighted records, the jury would have found him not guilty because the trial court "said that the medical records speak [for] themselves," but because the prosecutor highlighted certain portions, "he made them say what he wanted them to say." The petitioner also said that because trial counsel failed to obtain the records in advance of trial, he did not know the content of the entirety of the records, noting "[T]here could have been something in there that could have . . . released me, had me, you know, found not guilty."

The petitioner said that trial counsel should have argued the lack of video, fingerprint, and DNA evidence. He also said that counsel should not have argued that the petitioner acted in self-defense "without even talking to me" because "that implicated me in the crime." Instead, the petitioner wanted counsel "to attack the indictment because I shouldn't have never been charged with nothing aggravated because there was no weapon at all."

The petitioner said that trial counsel failed to involve him in trial preparations, noting, "I asked him several times to withdraw" because "we kept bumping heads" and because counsel "did nothing" to defend him. "He didn't press no defense, didn't investigate this case or none of that. He wouldn't call no witness. He wouldn't file no motions." The petitioner said that he wanted trial counsel to file pretrial motions because "I wanted a[n] evidentiary hearing. I wanted to see what was going to be used against me, you know." Specifically, the petitioner said that he asked counsel to move for suppression of evidence and dismissal of the charges. The petitioner acknowledged that counsel moved for a change of venue as he requested. When asked what evidence he

wanted suppressed, the petitioner replied: "I wanted a[n] evidentiary hearing. Then I was gonna talk about a suppression hearing. I wanted to see what was gonna be used against me, 'cause a lot of this stuff was hearsay. They had no evidence to link me to this crime whatsoever." The petitioner said that counsel should have moved to suppress testimony of the petitioner's "having a hatchet" because it was "just hearsay" and because neither the arresting officer nor an eyewitness "could testify that they seen me with a weapon, a hatchet. The jury didn't see a picture of a hatchet. Nobody saw a picture of this hatchet." The petitioner said that trial counsel failed to argue that the petitioner never wielded a hatchet and that "[h]e told me he was going to attack . . . the statements from the victim and the . . . witness, but he didn't."

The petitioner testified that had trial counsel hired an investigator, he could have discovered information by which he could have attacked the credibility of the State's witnesses. He also said that counsel should have raised the witness's prior inconsistent statements. He said that he asked counsel to introduce the report of the arresting officer to highlight what the petitioner believed to be inconsistencies with his testimony but that counsel declined, saying, "'Let's not get 'em nothing they can use.'" He said that counsel also failed to object to the admission of a "gruesome" photograph of the victim's injuries.

The petitioner acknowledged that trial counsel presented him with a plea offer from the State with a 17-year sentence and advised him to take the offer but said that counsel failed to explain to him "what he was going to do for me at trial." The petitioner did not ask counsel to present a counteroffer or further negotiate with the State because "I was kinda asking him to file motions on my behalf and investigate this case."

The petitioner said that trial counsel had a conflict of interests with the district attorney's office and that counsel failed to address the conflict. He explained that counsel's failure to object to the State's use of only a portion of the victim's medical records and counsel's going "along with" the State's highlighted portions of the records indicated that "it was a conspiracy." The petitioner also said that trial counsel "okayed for the prosecutor to use my juvenile record against me" to secure a gang enhancement despite there being "nothing gang-related about this thing they accused me of."

The petitioner said that counsel's communication with him "was bad," explaining that "[e]very time I asked him to do something, he would shut me down." He said that he wrote counsel and "asked him to file these motions for me, and I asked him to withdraw, and I asked him not to plead self-defense and all that" but that counsel "refused to help me." The petitioner wanted counsel to call "a forensic expert" as a witness, but counsel "said he can't." The petitioner also asked counsel to "attack the statements of the witness and the victim[]," but counsel failed to introduce any "of the statements into evidence" to impeach the witnesses. The petitioner said that he wanted trial counsel to

cross-examine State witness Joe Taylor on whether he had seen the petitioner "with any money at all after we left" the area.  The petitioner reiterated that he did not want counsel to pursue a defense theory of self-defense "[b]ecause I didn't hit this man or rob this man" but said that counsel "convinced me the [court] had to charge self-defense."

During cross-examination, the petitioner acknowledged that at the preliminary hearing, the victim testified that he saw the petitioner wield a hatchet and that the petitioner took $13 and a bus pass from him.  The petitioner claimed that the victim's testimony was "not evidence, that's hearsay."  The petitioner acknowledged that the victim testified to the same account at trial but said that another witness who was present during the incident "did not testify to that, that I hit [the victim.]  There's nothing to corroborate that, so I don't understand how a man there that saw nothing happen, 12 people could see that I'm guilty."  He reiterated that the State failed to produce the hatchet, pointing out that he believed the victim "was coerced" by the State to testify against the petitioner.  The petitioner acknowledged that he did not know how to locate the "forensic expert" that he wished to have called as a trial witness.  He also acknowledged that prior to trial, he did not know what evidence he wished to have suppressed.

Trial counsel testified that he did not believe that there was additional argument he could have made on the matter of the jury charge.  Counsel did not specifically recall the victim's medical records but said, "I believe they were admitted pursuant to affidavit."  He said that the only benefit to the defense from the victim's medical records was evidence that the victim "may have been under the influence of alcohol or drugs at the time."  He said, however, that the victim had already admitted to using crack cocaine and that he was "drinking alcohol at the time the alleged incident occurred."

Counsel said that he did not recall the specific witness that the petitioner wanted called but pointed out that "if I didn't have anything but a name to go on, I didn't have any ability to find or ascertain who the correct person is."  He said that he investigated "the background of Mr. Taylor" and the victim and that he cross-examined the victim about a prior conviction.  He said that he "filed a notice to utilize some prior offenses of Mr. Taylor, but I believe he gave some testimony that was favorable to the defense, so I did not want -- tactically speaking, I didn't want to impeach his credibility because of that reason."  He said that Mr. Taylor's testimony "fairly raised the issue of self-defense."

Trial counsel acknowledged that the petitioner had told him that he did not want to argue self-defense but said that "based on what his rationale was to me, I interpreted that as some confusion."  He explained that the petitioner "thought if he pled self-defense, you are pleading guilty, and I tried to explain to him that's not the case."  He said that after discussing it with the petitioner, "it was my understanding that we were on the same page, that we should utilize an argument for self-defense."

-4-

Trial counsel said that he communicated with the petitioner "pretty frequently." He acknowledged that "[t]here might be times when we disagreed on things, but at the end of the day, I thought everything was resolved and we were on the same page." Counsel said that he reviewed the discovery materials with the petitioner but acknowledged that the victim's medical records "were not part of the discovery" and were "held under seal up to the time of trial." Counsel said that he did not see the medical records before trial but that he did not recall anything objectionable in the medical records.

During cross-examination, trial counsel reiterated that he did not think that there was anything in the victim's medical records that was inadmissible, saying, "If I didn't feel like it was something admissible, I mean, I would have objected to it." Counsel said that he believed that the trial court was obligated to give an instruction on self-defense based on the evidence and that he explained that to the petitioner. He also said, "I believe based on the proof that was given, I think there was a tactical advantage for requesting a jury instruction on self-defense."

At the close of the evidence, the post-conviction court made oral findings, accrediting the testimony of trial counsel. The court concluded that the matter of the jury instruction was determined on direct appeal and that "there's been nothing new raised today in this hearing regarding [the] jury instruction issue." The court found that counsel's accredited testimony established that he did not receive the victim's medical records prior to trial. The court also found that the petitioner failed to establish that the medical records would have been excluded on the ground that certain portions had been highlighted. The court stated: "There's no proof of that today and nothing pointed out specifically in the medical records that would have made a difference, resulting in a not guilty verdict, or a different outcome at all in this trial." The court also found that trial counsel's accredited testimony established that he was prepared for trial, including having met with the petitioner and reviewed discovery materials. The court concluded that there was no basis on which counsel could have moved to suppress the victim's testimony of seeing the petitioner with a hatchet, objected to the State's use of the petitioner's juvenile felony convictions at sentencing, or attacked the indictment.

The post-conviction court concluded that because the petitioner failed to offer at the evidentiary hearing any witnesses whom he alleged counsel could have discovered with further investigation, he failed to establish that counsel performed deficiently in that matter. The court found that the petitioner did not establish any grounds for post-conviction relief related to plea negotiations and found that there was no evidence of a conflict of interests. The court also found that counsel's accredited testimony established that he believed that the proof at trial fairly raised the issue of self-defense and that he explained to the petitioner why the court "will charge it."

-5-

The post-conviction court memorialized its findings and conclusions in a written order denying post-conviction relief.

In this timely appeal, the petitioner reasserts his argument that trial counsel performed deficiently by failing to investigate the case, interview witnesses, file pretrial motions, object to the admission "of only a portion of the victim's medical records as opposed to all of the victim's medical records," and object to the trial court's instructing the jury on self-defense. The State argues that the petitioner is not entitled to post-conviction relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v.*

-6-

*State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Here, the petitioner has failed to carry his burden to prove by clear and convincing evidence sufficient facts to support his claim that trial counsel's representation was deficient. To support his argument, the petitioner relies solely on the petitioner's discredited testimony at the evidentiary hearing as evidence of counsel's alleged deficiencies, ignoring that the post-conviction court accredited the testimony of trial counsel over that of the petitioner.

As to the petitioner's allegation that trial counsel failed to adequately investigate the case or interview witnesses, the accredited testimony of trial counsel established that he reviewed discovery materials, investigated the State's witnesses, and "frequently" met with the petitioner. Furthermore, the petitioner has failed to present what additional evidence or witnesses counsel could have discovered with further investigation. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing.").

Trial counsel's testimony also established that he did not believe that the excluded portions of the victim's medical records were helpful to the defense because the only beneficial information contained in the victim's medical records was that the victim was under the influence of drugs and alcohol, which information was already in evidence. Moreover, the petitioner did not offer the victim's medical records at the post-conviction hearing, and, consequently, we will not speculate as to what other beneficial information the excluded portions of the records may have contained. *See id.*

The petitioner has failed to present any ground on which trial counsel could have moved to exclude the victim's testimony that he saw the petitioner wield a hatchet. Despite the petitioner's assertions, the victim's first-hand account of what he saw does not constitute hearsay. *See* Tenn. R. Evid. 801(c). That the petitioner believed the victim's testimony to be incredible does not merit him relief. The trier of fact determines the weight and credibility of the evidence, and evidence is not inadmissible simply because the petitioner does not believe it to be true.

Finally, trial counsel's accredited testimony established that he believed that the evidence fairly raised the issue of self-defense and that the trial court was required to provide a self-defense instruction. Counsel's testimony also established that after clarifying the petitioner's misconceptions about a self-defense strategy, the petitioner agreed that counsel should argue self-defense. Furthermore, we will not second-guess counsel's tactical decision to seek inclusion of a self-defense instruction and to argue that the petitioner acted in self-defense.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE